UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MORRIS JAMES YOUNG, SR.,

    Petitioner,

v.                                                        Case No. 2:11-cv-365
                                                                  HON. ROBERT HOLMES BELL

ROBERT NAPEL,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner Morris James Young, Sr., filed this petition for writ of habeas corpus challenging his state court convictions. After a four-day jury trial of two cases from 2008 and 2009, the jury found the petitioner guilty of possession with intent to deliver less than fifty grams of cocaine in 2008, unlawful delivery of less than fifty grams of cocaine in 2009, possession with intent to deliver less than fifty grams of cocaine in 2009, and maintaining a drug house. The petitioner was sentenced to 30 to 480 months for the 2008 conviction, 72 to 480 months for the 2009 convictions, and 12 to 24 months for the last count, all running concurrent, and credit for 360 days served.

Petitioner asserts the following claims:

I. There was insufficient evidence at trial to prove defendant guilty beyond a reasonable doubt that defendant committed the crime of possession with intent to deliver less than 50 grams of cocaine pursuant to MCL 333.7401(2)(a)(IV) where there was no proof that the defendant possessed, had control or the right to control cocaine which may or may not have been located at 2469 Bewick Street, Saginaw, Michigan in the 2008 case.

II. Counsel was ineffective for failure to object to hearsay testimony alleged to have been given to a police officer by an unknown and non-testifying confidential informant which implied that a drug sale

> had been made with defendant by the undercover agent and this likely constituted the basis upon which defendant was convicted of possession with intent to deliver cocaine in the 2008 case and failure to subpoena witnesses whose testimony would likely have changed the outcome of the 2009 case.
>
> III. There was insufficient evidence to prove beyond a reasonable doubt that defendant was the owner, operator or responsible party for the house located at 2469 Bewick Street, Saginaw, Michigan to support defendant's conviction for operating a drug house.

Petitioner filed an appeal in the Michigan Court of Appeals, asserting the same claims he asserts in his habeas corpus petition. The Michigan Court of Appeals affirmed Petitioner's convictions on April 12, 2011. *Id.* Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, which was denied on September 6, 2011. *People v. Young*, Michigan Supreme Court No. 143096 (September 6, 2011).

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

- 3 -

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner's first claim alleges that the evidence at trial was insufficient to find him guilty beyond a reasonable doubt.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict,

as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

The Michigan Court of Appeals rejected Petitioner's insufficient evidence claim stating:

> It is true that defendant did not actually own the house; rather, another relative did. Furthermore, the evidence showed that defendant spent much of his time at his girlfriend's house, and when he stayed at 2469 Bewick, he slept on a sofa in the living room. However, insulin needles to which defendant claimed ownership were found in the back bedroom. There is no evidence that the needles were actually used for any illicit purpose; the prosecution witness conceded that they are used by diabetics, and that was the purpose for which defendant claimed them. However, the inescapable fact is therefore that defendant's insulin needles were located in the back bedroom, where the cocaine was found. Therefore, even presuming defendant did not sleep in that room, he appears to have had some extensive connection to it.
>
> Additionally, neither of defendant's sons could explain the Bridge cards; not even the son who claimed responsibility for the drugs and admitted that he sometimes accepted Bridge cards as payment. Defendant did not otherwise have a substantial income: SSI checks and occasionally fixing cars. He nevertheless maintained the house with food in it for several children and an occasional guest despite an overall losing trend at the casino. Furthermore, the same kind of drugs were found in the same place in the same house a year later, despite defendant's inability *not* to be aware of them at that point. Based on defendant's admission that he was the adult in charge of the house, this suggests that the drugs were either his all along, or he had no control over the house whatsoever. Morse positively identified defendant's "distinctive" voice over the informant's electronic monitor, and the jury would have been in the position to evaluate the distinctiveness of defendant's voice as he testified at trial
>
> We find that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant did possess the cocaine found at 2469 Bewick in 2008.

*People v. Young*, Michigan Court of Appeals No. 296214, at 3 (April 12, 2011) (emphasis in the original).

The evidence presented at trial was sufficient to convict Petitioner of possession of cocaine. The Michigan Court of Appeals refers to many reasons the jury could reasonably find Petitioner possessed cocaine, including Petitioner claiming ownership of diabetic needles found near the cocaine, Petitioner maintaining the financial responsibilities of the house, Petitioner admitting being the adult in charge of the house, and law enforcement finding the same type of drugs in the same place in the house on multiple raids. Therefore, the Michigan Court of Appeals did not err in finding a rational trier of fact could find Petitioner guilty beyond a reasonable doubt on this count.

Petitioner's second claim for relief asserts ineffective assistance of counsel for not objecting to hearsay provided by a police officer in the 2008 case and failing to subpoena witnesses whose testimony would likely have changed the outcome of the 2009 case. Claims of ineffective counsel are reviewed under the *Strickland* standard. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

> Regarding the hearsay claim, the Michigan Court of Appeals stated:
>
> Defendant next argues that the prosecution elicited impermissible hearsay through Morse from the 2008 confidential informant identifying defendant as "Hillbilly." Given that no other witness had ever heard of defendant going by the name of "Hillbilly," or even having any reason to do so, the informant's identification would seem to cast doubt on the informant rather than bolster the prosecution's case. The informant's identification of defendant as "Hillbilly" is unlikely to have been seriously prejudicial to defendant, irrespective of its admissibility.

Michigan Court of Appeals No. 296214, at 4.

Petitioner claims that had counsel objected to that portion of the testimony referring to the "Hillbilly" nickname, the Court would have sustained the objection. However, there is no reason to believe an objection to the hearsay identifying Petitioner as "Hillbilly" by an unnamed confidential informant would have changed the outcome of the conviction. The Michigan Court of Appeals acknowledges that counsel for the Petitioner discredited the portion of the testimony identifying Petitioner as "Hillbilly" by establishing that "no other witness had ever heard of defendant going by the name of "Hillbilly." *Id.* Furthermore, in addition to the hearsay, Morse testified that he identified Petitioner by Petitioner's "deep, distinctive voice" that Morse heard over the monitor worn by the confidential informant during the controlled buy in 2008. *People v. Morse*, Hearing Transcript, No. 08-030940-FH-5, 09-032214-FH-5, Vol. I of IV at 103 (November 10, 2009). The additional testimony by Morse provided substantial evidence for the jury to find Petitioner guilty of the drug charge in 2008, regardless of the testimony referring to the "Hillbilly" nickname. Thus, there is no reason to believe that the jury was prejudiced by the hearsay testimony. Petitioner fails to prove that counsel was ineffective by not objecting to the hearsay.

> Regarding the failure to subpoena witnesses, the Michigan Court of Appeals stated:
>
> Defendant finally argues that a witness who did not testify would have provided more definitive testimony, and documentary proof, that the money defendant had on his person in 2008 came from recent casino winnings. We note that the jury was clearly willing to find other witnesses more credible than defendant, as shown by Abernathy's testimony and defendant's acquittal of any Vicodin-related charges. However, defendant was actually able to make the point to the jury that he had just won at the casino, and his subpoenaed records were given to the jury. We are simply not persuaded that there is substantial likelihood, under the circumstances of this case, that this proposed additional testimony would have changed the outcome.

*Id.*

The Michigan Court of Appeals concluded that substantial evidence was already provided to support the claim that money found on Petitioner came from casino winnings through the admittance of subpoenaed records from the casino. Petitioner argues that if an additional witness would have testified regarding the money, the outcome would have been different. However, the Michigan Court of Appeals correctly concluded that evidence supporting Petitioner's claim of casino winnings was already submitted into evidence by the records from the casino. Testimony from the additional witness would have been duplicate evidence and unnecessary. Petitioner fails to prove counsel's performance fell below an objective standard of reasonableness or that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner's final claim for relief asserts there is insufficient evidence in support of his conviction for operating a drug house. However, as of January 20, 2011, Petitioner is no longer in custody for this offense. Michigan Department of Correction's Offender Tracking Information System, MDOC No. 256238, MCL 333.7405(d). Under 28 U.S.C. § 2241(c)(3), a writ of habeas corpus cannot extend to a prisoner unless he is under custody for the offense.[1] Petitioner filed this petition on September 28, 2011, after the last date of custody for this offense. Therefore, Petitioner cannot file a claim for relief for the conviction of operating a drug house.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

---

[1]The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." *Maleng v. Cook*, 490 US 488, 490 (1989).

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: June 30, 2014